UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| DOYLE D. LANCASTER, | ) | |
| Plaintiff, | ) | 3:06-cv-00284-JCM-RAM |
| vs. | ) | |
| | ) | **ORDER** |
| NEVADA DEPARTMENT OF CORRECTIONS, *et al.*, | ) | |
| Defendants. | ) | |

This is a civil rights action filed pursuant to 42 U.S.C. § 1983 by a Nevada prisoner. By order filed December 4, 2006, the court dismissed the original complaint (Docket #1), the first amended complaint (Docket #4), and the second amended complaint (Docket #5) for failure to state a cognizable claim. (Docket #9). Plaintiff was granted leave to file a third amended complaint within 45 days of the December 4, 2006 order. (Docket #9).

On January 18, 2007, plaintiff filed a third amended complaint. (Docket #11). By order filed June 16, 2008, the third amended complaint was dismissed for failure to state a cognizable claim, and plaintiff was granted 30 days to file a fourth amended complaint. (Docket #13). Plaintiff requested and received several extensions of time to file the fourth amended complaint. (Docket #16, #18, #20, #22, #24). The final extension of time was granted on May 8,

1  2009. (Docket #24). Plaintiff filed the fourth amended complaint on July 23, 2009. (Docket #25).
2  The fourth amended complaint is 126 pages in length, with exhibits consisting of 115 pages.
3  (Docket #25, at Parts 1, 2, and 3). Plaintiff filed a motion to correct pages of the fourth amended
4  complaint, and by order filed February 17, 2010, the court granted plaintiff's request to substitute
5  page 26 of the fourth amended complaint with pages 26 and 26a, attached to his motion to correct.
6  (Docket #26 and #27). On April 29, 2010, plaintiff filed a "notice," which was a submission of
7  typewritten pages 17-23, 35-45, 85-122, and 125-126, as well as a typewritten appendix of exhibits
8  to the fourth amended complaint. (Docket #28). The court now addresses the fourth amended
9  complaint (FAC).

10 **I. Screening Standard**

11  Pursuant to the Prisoner Litigation Reform Act (PLRA), federal courts must dismiss a
12  prisoner's claims, "if the allegation of poverty is untrue," or if the action "is frivolous or malicious,"
13  "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant
14  who is immune from such relief." 28 U.S.C. § 1915(e)(2); 28 U.S.C.§ 1915A. Dismissal of a
15  complaint for failure to state a claim upon which relief may be granted is provided for in Federal
16  Rule of Civil Procedure 12(b)(6), and the court applies the same standard under Section 1915(e)(2)
17  when reviewing the adequacy of a complaint or amended complaint.
18  Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel*
19  *v. Laboratory Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a
20  claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim
21  that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In
22  making this determination, the court takes as true all allegations of material fact stated in the
23  complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v.*
24  *Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations in a *pro se* complaint are held to less
25  stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9
26  (1980); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam*); *see also Balistreri v. Pacifica*

*Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

All or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (*e.g.* claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (*e.g.* fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

**II. Fourth Amended Complaint**

Plaintiff describes the fourth amended complaint as an action pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1986, and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*. The fourth amended complaint contains five enumerated counts. Plaintiff names 35 defendants in the fourth amended complaint. Plaintiff seeks declaratory relief, injunctive relief, and monetary damages. (FAC, Docket #25).

**A. Count I**

Count I of the fourth amended complaint alleges that the City of Reno and its employees discriminated against plaintiff on the basis of disability during interrogation and arrest by failing to provide him with reasonable accommodations for his disabilities. (FAC, Docket #25, at p. 18). Plaintiff alleges that he suffers from "chronic sight, hearing, and mental impairments due to organic brain damage and other complicating medical factors." (*Id.*, at p. 20). Plaintiff alleges that in 2003, he had a stroke and was diagnosed with carotid stenosis. Plaintiff underwent a carotid endarterectomy surgery in February 2003 to correct the carotid stenosis. (*Id.*, at p. 31). Plaintiff refers to a letter from his treating physician, Dr. Lovett, which states the following: "Mr. Lancaster had a carotid endarterectomy for critical carotid stenosis. He has MRI evidence of previous lacunar infarcts (mini-strokes). I believe these events have influenced Mr. Lancaster's thought processes and ability to make decisions." (*Id.*, at p. 31). In addition to mental disability, plaintiff also alleges that he has a serious hearing impairment. (*Id.*, at p. 32). Plaintiff alleges that he has been legally deaf

3

since the late 1980's. (*Id.*, at p. 36). Plaintiff explains that he had hearing aids for both ears, but they provide little help, and that for him to effectively hear and communicate, the person speaking to him must be very close to him. (*Id.*, at pp. 32-33). Plaintiff also alleges that he has a vision impairment caused by cataracts. (*Id.*, at p. 33).

Plaintiff alleges that, in conducting the initial interview regarding the crimes for which he was ultimately convicted, the City of Reno police department failed to provide plaintiff with reasonable accommodation for his hearing impairment and mental disabilities. (*Id.*, at p. 22). Plaintiff alleges that on September 19, 2002, he arrived at a Reno police station and was escorted to an interrogation room by police detective Tom Broom. During the interrogation, plaintiff informed detective Broom that he could not hear what the detective was saying. (*Id.*, at p. 29). Plaintiff contends that because of the lack of reasonable accommodations for his disabilities, he could not understand and fully participate in the interrogation conducted by detective Broom. (*Id.*). Plaintiff alleges that the Reno Police Department have a policy and practice of denying individuals with disabilities reasonable accommodation when undergoing investigation, custodial interrogation, and arrest. (*Id.*, at p. 36). Plaintiff asserts that Reno Chief of Police, Michael Poehlman, was responsible for the Reno Police Department's policy of failing to accommodate persons with disabilities.

The court finds that plaintiff has alleged sufficient facts to allow the count 1 to proceed under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, against defendants City of Reno, Reno Chief of Police Michael Poehlman, and Reno police detective Tom Broom.

**B. Count II**

**1. ADA Claim**

In count II of the fourth amended complaint, plaintiff alleges that he was placed in custody at the Washoe County Detention Facility on September 20, 2002. (*Id.*, at p. 39). Plaintiff alleges that the staff at the Washoe County Detention Facility failed to provide reasonable accommodations for his disabilities. For example, plaintiff could not hear orders given to him by jail staff members, and as a result, he "ended up getting shoved and physically knocked around" by staff.

4

(*Id.*, at p. 40-41).  Plaintiff also alleges that when his attorney, Lee Hotchkin, visited him in jail two days after his incarceration began, he was unable to hear what Hotchkin said over the phone.  (*Id.*, at p. 41).

Plaintiff alleges that the Washoe County Detention Facility failed to provide him with reasonable accommodations for his hearing impairment during his initial period of confinement following his arrest on September 20, 2002, until he was released on bail.  (*Id.*, at pp. 41-42). Plaintiff alleges that the Washoe County Detention Facility has a policy and practice of denying individuals with disabilities reasonable accommodations.  (*Id.*, at p. 42).  Plaintiff asserts that Michael Haley, Washoe County Sheriff, is responsible for the Washoe County Detention Facility's policy of failing to accommodate persons with disabilities.  The court finds that plaintiff has alleged sufficient facts to allow count 1 to proceed under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, against defendants Washoe County and Washoe County Sheriff Michael Haley.

**2. Deliberate Indifference to Medical Needs**

Following sentencing on July 2, 2003, plaintiff's bail was revoked and he was again taken into the custody of the Washoe County Detention Facility to await transport to the Nevada Department of Corrections.  (*Id.*, at p. 43).  In February 2003, when plaintiff was released on bail pending resolution of the criminal charges, plaintiff had carotid endarterectomy surgery to correct critical carotid stenosis.  (*Id.*).  After surgery, plaintiff's doctor prescribed him Plavix to aid in blood circulation.  (*Id.*).  Plaintiff was also prescribed Flomax to treat an enlarged prostate gland.  (*Id.*). While incarcerated at the Washoe County Detention Facility beginning July 2, 2003, plaintiff did not receive either Plavix or Flomax.  (*Id.*, at pp. 43-44).

In addition, a week prior to sentencing, in June 2003, plaintiff had cataract surgery on his right eye and was scheduled for cataract surgery in left eye ten days after the first surgery.  (*Id.*, at p. 43).  Plaintiff informed custody and medical staff at the Washoe County Detention Facility that he was scheduled for surgery on his left eye, but they made no arrangement for plaintiff to have second surgery.  According to plaintiff, he had already paid for the second surgery.  (*Id.*, at p. 43).  Plaintiff

was also deprived of eye drops that his doctor had prescribed following cataract surgery on his right eye in June 2003. (*Id.*, at p. 44). Plaintiff alleges that the doctor stressed the importance of using the prescription eye drops, so that the surgery recovery would be successful. (*Id.*). When plaintiff told jail staff about his need for the prescribed eye drops, staff denied the medical request, stating, "That's your problem, not ours." (*Id.*, at p. 44). Plaintiff alleges permanent loss of partial vision. (*Id.*, at pp. 44-45). Plaintiff alleges that the Washoe County Detention Facility has a policy and practice of denying and/or delaying treatment and medication. (*Id.*, at p. 45).

The court finds that plaintiff's allegations of being denied medically necessary treatment and prescription medications, and plaintiff's allegations that the Washoe County Detention Facility engaged in a pattern and practice of denying treatment and medications, states a cognizable claim for deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Farmer v. Brennan*, 511 U.S. 825, 834-837 (1994). The Eighth Amendment claim of deliberate indifference to medical needs in count II will be allowed to proceed against defendants Washoe County and Washoe County Sheriff Michael Haley.

### C. Count III

In count III of the fourth amended complaint, plaintiff alleges:

> Irrational disability discrimination and failure to provide reasonable accommodations for plaintiff's physical and mental disabilities by named defendants. This resulted in denial of plaintiff's right to adequate, effective, and meaningful court access during state court criminal proceedings initiated against plaintiff in violation of the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments to the Constitution of the United States and corresponding provisions of the Constitution of the State of Nevada.

(FAC, Docket #25, at p. 46). Plaintiff alleges that his defense attorneys, David Houston and Paul Quade, were aware of his mental disabilities and hearing impairment. Plaintiff alleges that his disabilities and impairments pre-dated his September 20, 2002 arrest and continued during all stages of his criminal prosecution, appeals, and post-conviction proceedings. (*Id.*, at p. 46). Plaintiff

6

alleges that the letter written by Dr. Lovett[1] was provided to his defense attorneys, the prosecutor, and the state court judge. (*Id.*, at pp. 46-47). Plaintiff alleges that the strokes affected his brain function and his competency during criminal proceedings. (*Id.*, at p. 47). Plaintiff further alleges that his hearing impairment and visual impairment made him unable to understand what was happening and what was being communicated to him during criminal proceedings. (*Id.*, at p. 47). Plaintiff alleges that: "This resulted in a denial of plaintiff's right to adequate, effective, and meaningful court access during state court criminal proceedings initiated against plaintiff . . . ." (*Id.*).

In addition, plaintiff alleges that there was a conflict of interest with his defense attorney, David Houston. (*Id.*, at p. 48). According to plaintiff, Houston was retained by members of plaintiff's family to represent him in criminal proceedings, conditioned on Houston not taking the case to trial and instead negotiating a plea bargain, in order to save the victim (the granddaughter of plaintiff) from having to testify in court. (*Id.*, at pp. 48-89).

Plaintiff is alleging facts of the kind that could entitle him to habeas corpus relief. When a prisoner challenges the legality or duration of his custody, or raises a constitutional challenge which could entitle him to an earlier release, his sole federal remedy is a writ of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475 (1973); *Young v. Kenny*, 907 F.2d 874 (9th Cir. 1990), *cert. denied* 11 S.Ct. 1090 (1991). Moreover, when seeking damages for an allegedly unconstitutional conviction or imprisonment, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck v. Humphrey*, 512 U.S. 477, 487-88 (1994). "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Id.* at 488. Plaintiff has not, and indeed, cannot allege that his conviction has been reversed or otherwise invalidated. Plaintiff fails to state a cognizable

---

[1] The letter stated: "Mr. Lancaster had a carotid endarterectomy for critical carotid stenosis. He has MRI evidence of previous lacunar infarcts (mini-strokes). I believe these events have influenced Mr. Lancaster's thought processes and ability to make decisions." (FAC, at p. 31 and p. 46).

7

civil rights claim in count III.  Because plaintiff fails to state a cognizable claim and amendment would be futile, count III is dismissed with prejudice.

### D. Count IV

Count IV of the fourth amended complaint reads as follows:

> Plaintiff further alleges that a conspiracy existed as a matter of official unwritten policy and practice from the inception of the criminal investigation and prosecution initiated in Justice Court of Reno Township case number 02-5108 and Second Judicial District Court of the State of Nevada case number CR-03P0255, to overcharge plaintiff with crimes for which there existed no reliable direct or circumstantial evidentiary basis in either fact or law.  They thereby obtained a false or fabricated conviction, which deprived plaintiff of equal protection of the laws and equal privileges under the laws.  Other named defendants, having power to prevent or aid in preventing commission of the same, neglected to do so by indifference, an invidious animus, by acquiescence or giving tacit approval of the conspiracy to falsely convict, for self-serving reasons of insular self-interest and political expedience in disposing of an unwanted case, and for the appeasement of an irate and incensed public spirit existing in the community against such crimes, in violation of the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the Constitution of the United States and the corresponding provisions of the Constitution of the State of Nevada.

(FAC, Docket #25, at p. 89).  Plaintiff alleges that a conspiracy existed between his defense counsel, the prosecution, and the judge to overcharge him with crimes and to obtain a false or fabricated conviction.  (*Id.*, at pp. 89-101).  As explained above, plaintiff cannot sue civilly for an allegedly unconstitutional conviction or imprisonment unless the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  *Heck v. Humphrey*, 512 U.S. 477, 487-88 (1994).  Because plaintiff fails to state a cognizable claim and amendment would be futile, count IV is dismissed with prejudice.

### E. Count V

In count V of the fourth amended complaint, plaintiff alleges that the Nevada Department of Corrections and its employees have a policy and practice of denying treatment and medication for the serious medical needs of prisoners.  (FAC, Docket #25, at p. 101).  Plaintiff

8

alleges that he has experienced the following instances of denial of medical treatment: (1) denial of specialist-recommended surgery for congestive heart failure (*Id.*, at p. 106); (2) denial of specialist-recommended nuclear stress test, a diagnostic test to determine treatment for coronary artery disease (*Id.*, at p. 107); (3) denial of cataract surgery for his left eye (*Id.*, at pp. 110-12); and (4) intentional delay and denial of prescribed medication and treatment, and abrupt discontinuation of prescribed medications, such as Plavix and blood pressure medication (*Id.*, at p. 114). Plaintiff alleges that the Northern Nevada Correctional Center lacks competent medical staff and lacks an adequate procedure for responding to medical emergencies. (*Id.*, at p. 102). Plaintiff further alleges that the Nevada Department of Corrections has a policy and practice of: failing to maintain an adequate system to provide prescription medication refills; failing to make timely referrals for speciality care; failing to provide specialist-recommended diagnostic and surgical procedures, particularly for prisoners over age 65; failing to keep professionally adequate, accurate, up-to-date medical records; failing to adequately monitor prisoners with chronic conditions; refusing to treat chronic pain; failing to ensure adequate coverage by qualified physicians; and failing to ensure that medical co-payment charges for medical visits are unrelated to illness or injury involving chronic care issues. (*Id.*, at pp. 102-103). Plaintiff alleges that the warden of NNCC and director of corrections Howard Skolnik have personal knowledge of these policies and practices, yet have not acted to correct the problems. (*Id.*).

The court finds that plaintiff's allegations of being denied medically necessary treatment, and plaintiff's allegations that the Nevada Department of Corrections engaged in a pattern and practice of denying treatment and medications, states a cognizable claim for deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Farmer v. Brennan*, 511 U.S. 825, 834-837 (1994). The Eighth Amendment claim of deliberate indifference to medical needs in count V will be allowed to proceed against defendants Howard Skolnik, Donald Helling, and James Benedetti.

**III. Conclusion**

**IT IS THEREFORE ORDERED** that counts III and IV of the fourth amended

complaint are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that count I of the fourth amended complaint **MAY PROCEED** as to defendants City of Reno, Reno Police Chief Michael Poehlman, and Reno police detective Tom Broom.

**IT IS FURTHER ORDERED** that count II of the fourth amended complaint **MAY PROCEED** as to defendants Washoe County and Washoe County Sheriff Michael Haley.

**IT IS FURTHER ORDERED** that count V of the fourth amended complaint **MAY PROCEED** as to defendants Howard Skolnik, Donald Helling, and James Benedetti.

**IT IS FURTHER ORDERED** that the following defendants are **DISMISSED FROM THIS ACTION WITH PREJUDICE**: Kenny Guinn, Catherine Cortez Masto, Frankie Sue Del Papa, George Togliatti, Jerald Hafen, Amy Wright, Bernard W. Curtis, James W. Roundtree, Howard Rigdon, Richard Gammick, Kelli Anne Viloria, David Clifton, Joseph Plater, Lee Hotchkin, David Houston, Paul Quade, Judge Jerome Palaha, Jim Gibbons, Ross Miller, Jackie Crawford, Ted De'Amico, Robert Bannister, Tony Corda, John Perry, Robert P. Stuyvesant, State of Nevada, and the Nevada Department of Corrections.

**IT IS FURTHER ORDERED** that the clerk of court shall issue summons for defendants **City of Reno, Reno Police Chief Michael Poehlman, Reno police detective Tom Broom, Washoe County, and Washoe County Sheriff Michael Haley**, and deliver same, along with a copy of the fourth amended complaint, the instant order, and the attached "Notice of Intent to Proceed with Mediation" form, to the U.S. Marshal for service. Plaintiff shall have twenty (20) days in which to furnish to the U.S. Marshal the required Forms USM-285. Within twenty (20) days after receiving from the U.S. Marshal a copy of the Form USM-285 showing whether service has been accomplished, plaintiff must file a notice with the court identifying which defendants were served and which were not served, if any. If plaintiff wishes to have service again attempted on an unserved defendant(s), then a motion must be filed with the court identifying the unserved defendant(s) and specifying a more detailed name and/or address for said defendant(s), or whether some other manner

of service should be attempted.

**IT IS FURTHER ORDERED** that the clerk **shall electronically serve a copy of this order, including the attached "Notice of Intent to Proceed with Mediation" form, along with a copy of plaintiff's fourth amended complaint, on the Office of the Attorney General of the State of Nevada, attention Pamela Sharp**. The Attorney General **SHALL FILE AND SERVE** an answer or other response to the complaint within **thirty (45) days** of the date of entry of this order.

**IT IS FURTHER ORDERED** that the parties **SHALL DETACH, COMPLETE, AND FILE** the attached "Notice of Intent to Proceed with Mediation" form on or before **thirty (30) days** from the date of entry of this order.

**IT IS FURTHER ORDERED** that henceforth, plaintiff shall serve upon defendants, or, if an appearance has been made by counsel, upon their attorney(s), a copy of every pleading, motion, or other document submitted for consideration by the court.  Plaintiff shall include with the original paper submitted for filing a certificate stating the date that a true and correct copy of the document was mailed to the defendants or counsel for defendants.  If counsel has entered a notice of appearance, the plaintiff shall direct service to the individual attorney named in the notice of appearance, at the address stated therein.  The court may disregard any paper received by a district judge or a magistrate judge that has not been filed with the clerk, and any paper which fails to include a certificate showing proper service.

Dated this 1st day of September, 2010.

_____
UNITED STATES DISTRICT JUDGE

```
_____
Name
_____
Prison Number
_____
Address
_____

_____
```

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| _____, ) | Case No. _____ |
|---|---|
| Plaintiff, ) | |
| ) | |
| v. ) | **NOTICE OF INTENT TO** |
| ) | **PROCEED WITH MEDIATION** |
| _____ ) | |
| _____ ) | |
| Defendants. ) | |
| ) | |

    This case may be referred to the District of Nevada's early inmate mediation program. The purpose of this notice is to assess the suitability of this case for mediation. Mediation is a process by which the parties meet with an impartial court-appointed mediator in an effort to bring about an expedient resolution that is satisfactory to all parties.

1. Do you wish to proceed to early mediation in this case? ____ Yes ____ No

2. If no, please state the reason(s) you do not wish to proceed with mediation? _____
   _____
   _____
   _____

3. List any and all cases, including the case number, that plaintiff has filed in federal or state court in the last five years and the nature of each case. (Attach additional pages if needed).
   _____
   _____

4. List any and all cases, including the case number, that are currently pending or any pending grievances concerning issues or claims raised in this case. (Attach additional pages if needed).

_____

_____

_____

_____

5. Are there any other comments you would like to express to the court about whether this case is suitable for mediation.  You may include a brief statement as to why you believe this case is suitable for mediation.  (Attach additional pages if needed).

_____

_____

_____

_____

**This form shall be filed with the Clerk of the Court on or before thirty (30) days from the date of this order.**

<u>Counsel for defendants</u>: By signing this form you are certifying to the court that you have consulted with a representative of the Nevada Department of Corrections concerning participation in mediation.

Dated this ____ day of _____, 20____.

_____
Signature

_____
Name of person who prepared or
helped prepare this document